

**SIGNED this 27th day of August, 2021**

                                                                                 **Nicholas W. Whittenburg**
                                                             **UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE
# WINCHESTER DIVISION

| | | |
|---|---|---|
| **In re:** ) | | |
| ) | | |
| **Crystal Dawn Rigney** ) | | No. 4:20-bk-12437-NWW |
| ) | | **Chapter 7** |
| **Debtor** ) | | |
| ) | | |
| **Dr. Gil Center for Back, Neck** ) | | |
| **and Chronic Pain Relief** ) | | |
| ) | | |
| **Plaintiff** ) | | |
| ) | | |
| v. ) | | Adv. No. 4:21-ap-01002-NWW |
| ) | | |
| **Crystal Dawn Rigney** ) | | |
| ) | | |
| **Defendant** ) | | |

# M E M O R A N D U M

This adversary proceeding was initiated by Dr. Gil Center for Back, Neck and

Chronic Pain Relief to determine the dischargeability of a debt pursuant to 11 U.S.C.

§ 523(a)(2), (4), and (6). Jurisdiction is proper in this court. 28 U.S.C. § 1334(b). This adversary proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

On cross-motions for summary judgment, the court previously dismissed Count I of the complaint, which asserted that the defendant obtained money or property by fraud and sought a determination that the plaintiff's claim is nondischargeable under 11 U.S.C. § 523(a)(2). Having considered the evidence presented at trial on the remaining counts, together with the arguments and briefs of the parties, the court makes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.

## I. Background

In November 2015, the defendant was involved in an automobile collision. She suffered injuries and sought treatment from the plaintiff during the spring of 2016.

As a condition to receiving treatment, the defendant executed an Assignment of Insurance Benefits and Proceeds of Claim and an Assignment of Benefits and Payment Agreement (collectively, the "Assignments") on March 23, 2016. Pursuant to the Assignments, the defendant assigned to the plaintiff her interest in any insurance benefits she became entitled to receive to the extent of charges for the plaintiff's services, whether the benefits were paid by her insurance carrier or the carrier of a third party that may be responsible for the defendant's injuries. Additionally, the defendant executed a Doctor's Lien whereby she granted the plaintiff a lien on proceeds of any settlement, judgment, or verdict resulting from the collision. Finally, the defendant provided the plaintiff with information concerning her personal heath insurance.

Specifically, she presented her health insurance card issued by Tri-Care Health Insurance ("Tri-Care").

After executing documents and providing health insurance information, the defendant began receiving treatment from the plaintiff. The last treatment was received on May 19, 2016. On or about August 17, 2016, the defendant received $25,000.00 from Progressive Insurance Company ("Progressive"), the insurance company insuring the interests of the other driver in the collision. She did not use any of the proceeds to pay the plaintiff's outstanding balance totaling $4,835.00. The defendant filed a petition for relief under chapter 7 of the bankruptcy code on September 14, 2020. The plaintiff commenced this adversary proceeding with the filing of its complaint on January 18, 2021.

## II. Legal Analysis

### A. Willful and Malicious Injury.

Exceptions to discharge are construed strictly against creditors. *Gleason v. Thaw*, 236 U.S. 558, 562 (1915); *Padzierz v. First Am. Title Ins. Co. (In re Padzierz)*, 718 F.3d 582, 586 (6th Cir. 2013) (citing *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998)). A party seeking a determination that its claim be excepted from discharge must prove the required elements "by a preponderance of the evidence." *Padzierz*, 718 F.3d at 586 (citing *Grogan v. Garner*, 498 U.S. 279 (1991)).

In Count II of the complaint, the plaintiff seeks a declaration that its $4,835.00 claim is nondischargeable under 11 U.S.C. §523(a)(6). For the plaintiff to prevail under

that section, it must prove that the defendant caused injury that was both willful and malicious. *MarketGraphics Research Grp., Inc. v. Berge (In re Berge)*, 953 F.3d 907, 914 (6th Cir. 2020). Taken together, those two terms—willful and malicious—create a two-prong inquiry for a creditor to satisfy. Courts analyze the terms individually. *Id.* at 916.

Willful conduct requires actual intent to injure "not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 118 (1998). A defendant acts willfully if she desires the consequences of her actions or believes with reasonable certainty that such consequences will occur. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). Malicious under Section 523(a)(6) means "in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citations omitted).

The plaintiff largely relies on the terms of the Doctor's Lien and Assignments to support its case. It is undisputed that the Doctor's Lien and Assignments encumbered and assigned, respectively, the proceeds of the settlement check issued by Progressive to the extent of the charges for medical services provided by the plaintiff. It is also undisputed that the defendant used the settlement proceeds without paying the plaintiff for the medical services provided. The plaintiff maintains that these facts establish that the defendant willfully and maliciously converted the plaintiff's property and, therefore, its claim should be declared nondischargeable under 11 U.S.C. §523(a)(6).

To counter, the defendant testified that she did not read or understand the Assignments or Doctor's Lien. She argues that because she did not read those

agreements, she did not in fact know that the plaintiff held an interest in the proceeds of the settlement. In turn, because she did not know that the plaintiff was the assignee of or held a lien encumbering the settlement proceeds, she maintains that she could not possess the culpable state of mind that is a predicate to declaring the plaintiff's debt nondischargeable. The defendant's contention is contrary to the law.

Absent proof of fraud, duress, or action by the plaintiff preventing the defendant from reading the documents, she is bound by and presumed to know and understand the terms of the agreements she signed. *See, e.g.*, *Steinberg v. Creswell & Co., Inc. (In re Halls Trading Post, Inc.)*, 15 B.R. 781, 783–84 (Bankr. E.D. Tenn. 1981) (citations omitted) (reviewing Tennessee's general rule that a party to a written contract is conclusively presumed to know and assent to its contents in the absence of fraud, misrepresentation, or other wrongful act by another contracting party); *see also Brass Reminders Co. v. RT Eng'g Corp.*, 844 F. App'x 813, 821 (6th Cir. 2021) ("Notice of a contract's terms is presumed when a person has the opportunity to read the contract and accepts the contract offer. A party cannot abrogate the terms it dislikes after the fact, unless terms are misleading . . . ."). Although she testified that she has no legal background and has only a limited education, the defendant does not maintain that she does not have the capacity to enter into a contract. Nor does she maintain that the plaintiff prohibited her from reading the agreements. She merely maintains that she did not read the agreements or understand their terms. If the law allowed a party to escape the consequences of a written contract because the party failed to read or understand the contract, particularly an agreement that affords the other party an interest in property, the ability to rely on written agreements would be impaired, if not destroyed.

Although bound by and presumed to know the terms of the documents she executed prior to receiving treatment from the plaintiff, those documents nevertheless do not conclusively establish that the defendant willfully misappropriated the plaintiff's property. In addition to assigning and granting a lien encumbering the settlement proceeds, the Assignments and Doctor's Lien each direct all persons responsible for the defendant's health care costs, including Tri-Care and Progressive, to make payments for health care services directly to the plaintiff. Further, the Personal Injury / Automobile Accident Financial Policy also executed by the defendant prior to receiving medical services states that the plaintiff "will bill your insurance carrier on your behalf," but later, it states that the plaintiff "will not bill your personal health insurance for personal injury." The court finds these provisions ambiguous, if not inconsistent.

The defendant argues that when she received the settlement check from Progressive, she believed that any amounts owed to the plaintiff had been paid by Tri-Care or, perhaps, Progressive. The defendant did provide the plaintiff with proof that she maintained health insurance through Tri-Care prior to receiving treatment. This fact, coupled with the fact that the Assignments and Doctor's Lien directed insurance companies to pay the plaintiff directly and authorized the plaintiff to bill those companies for the medical services lends credence to the defendant's belief. The plaintiff's proof at trial did not adequately rebut the defendant's argument.

The plaintiff presented Mariah Wolfe, a co-owner of BMW Case Management, LLC ("BMW"). BMW is the agent for the plaintiff charged with billing and collections of the plaintiff's accounts receivable. Ms. Wolfe maintained that the defendant was advised of all of her contractual obligations to the plaintiff, including that she owed the

plaintiff for the medical services provided and that the settlement proceeds were to be used to satisfy that indebtedness.

However, Ms. Wolfe's testimony was very vague and generalized. She acknowledged that she had no direct communications with the defendant. Instead, she testified that Bernadette Wolfe, a prior owner of BMW, communicated with the defendant. Bernadette Wolfe did not testify at the trial regarding the substance of any purported communications with the defendant. Instead, Ms. Wolfe testified about BMW's general practice of communicating with account debtors of BMW's clients, including the plaintiff. Nor did the plaintiff introduce any call logs or other business records memorializing the details of any communications between any representatives of BMW or the plaintiff and the defendant. There was simply no direct proof to rebut the defendant's belief that the plaintiff had been paid for the medical services provided. The court did not find Ms. Wolfe's testimony helpful and, accordingly, did not afford it much weight.

The invoices submitted in this case by the plaintiff also raise concerns for the court. One invoice attached to the complaint is dated October 7, 2016. An invoice admitted into evidence at trial is dated June 17, 2021. The invoices are not identical. The invoice dated in 2016 is: 1) one page, 2) contains entries ranging from April 26, 2016, through May 19, 2016, 3) lists a Nashville, Tennessee, address for the plaintiff, and 4) lists the patient's case type as PIP-REL.

The invoice from 2021 is: 1) three pages, 2) contains entries ranging from March 23, 2016, through May 19, 2016, 3) lists a Lebanon, Tennessee, address for the plaintiff, and 4) lists the patient's case type as PICOLLPT. The total amount on each is the same, however: $4,835.00. The court presumes that the invoice dated June 17,

2021, was merely printed on that date. However, the remaining differences are a mystery to the court.

The record is unclear as to whether any invoice was actually sent to the defendant or perhaps sent only to Progressive for payment upon the settlement of the defendant's personal injury claim. As noted, the testimony by Ms. Wolfe concerning any communications with the defendant was very vague. Even assuming the defendant received the October 7, 2016 invoice on that date, there was no credible proof that the defendant was aware that she owed an outstanding balance to the plaintiff when she received the settlement check in mid-August, 2016, almost two months prior to the date of the invoice and approximately three months after receiving her last medical treatment. Under these circumstances, when she received the settlement check from Progressive, the defendant could have easily believed that the plaintiff had previously billed Tri-Care and had been paid for the medical services at issue.

For the reasons discussed above, the court finds that the defendant more likely than not believed that any amounts owing to the plaintiff for medical services she received had been paid when she received the $25,000.00 settlement check from Progressive. Consequently, the court finds that the plaintiff failed to satisfy its burden of proving that the defendant willfully or maliciously injured the plaintiff and declines to hold that the defendant's indebtedness to the plaintiff is nondischargeable under 11 U.S.C. § 523(a)(6).

**B. Defalcation While Acting in a Fiduciary Capacity.**

In Count III of the complaint, the plaintiff maintains that the defendant's indebtedness is nondischargeable under 11 U.S.C. § 523(a)(4) because the defendant commit-

ted a "fraud or defalcation while acting in a fiduciary capacity." The complaint does not pursue nondischargeability under larceny or embezzlement. Previously, the court granted in part the defendant's motion for summary judgment dismissing a count that alleged that the defendant defrauded the plaintiff under 11 U.S.C. § 523(a)(2). What remains is a determination whether the defendant committed a defalcation while acting in a fiduciary capacity.

To establish defalcation while acting in a fiduciary capacity, the plaintiff must prove three elements: "(1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Bd. of Trustees of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (quoting *Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121, 125 (6th Cir.1985); *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005)). For the alleged fiduciary relationship to satisfy 11 U.S.C. § 523(a)(4), "the alleged fiduciary must have duties that preexist the act creating the debt." *Bucci*, 493 F.3d at 643.

Whether there is a fiduciary relationship under 11 U.S.C. § 523(a)(4) is a question of federal law, not state law. *Tenn. Educ. Lottery Corp. v. Cooper (In re Cooper)*, 430 B.R. 480, 489 (Bankr. E.D. Tenn. 2010) (citing *Blaszak*, 397 F.3d at 390). In line with the general rule to construe exceptions to discharge narrowly, "the Sixth Circuit has repeatedly construed 'the term "fiduciary capacity" found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances,'"

including not extending the discharge exception to scenarios that only satisfy common law fiduciary relationships. *Bucci*, 493 F.3d at 641 (quoting *Blaszak*, 397 F.3d at 391).

To establish a "fiduciary capacity," a creditor must prove the existence of an express or technical trust. *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997). Mere use of trust language is insufficient to create a fiduciary relationship that satisfies 11 U.S.C. § 523(a)(4). *Cash Am. Fin. Svcs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 115 (B.A.P. 6th Cir. 2007) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 334 (1934); *Borg-Warner Acceptance Corp. v. Miles (In re Miles)*, 5 B.R. 458, 460 (Bankr. E.D. Va. 1980) (holding that parties may not "cloak" a "transaction in the guise of a trust by the 'magic words' in the agreement, 'in trust;'" "[v]erbal legerdemain does not impose a fiduciary duty on the debtor.")).The Sixth Circuit requires a creditor to prove four elements for an express or technical trust: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Bucci*, 493 F.3d at 640 (quoting *Blaszak*, 397 F.3d at 391–92).

The Assignment of Benefits and Payment Agreement states: "PATIENT agrees that in the event that PATIENT receives any check, draft, or other payment subject to this Assignment, such monies will be held in trust for ASSIGNEE." The defendant testified she did not read or understand that document. Nevertheless, as noted above, the defendant is bound by and presumed to know the terms of the written agreement. While that is the only reference in the record to a trust, it does reflect that the parties intended to create a trust, thereby satisfying the first element necessary to establish an express or technical trust.

Under the portion of the assignment quoted above, the "patient" is to hold any check for the benefit of the "assignee." Thus, the "patient" (the defendant) is a trustee, and the "assignee" (the plaintiff) is the beneficiary. The res is the proceeds of any settlement proceeds that were assigned to the plaintiff but coming into the possession of the defendant, including the insurance proceeds paid by Progressive. Therefore, the court finds that the assignment creates an express or technical trust and that the defendant was acting in a fiduciary capacity when she received the settlement proceeds from Progressive.

Under the Assignments, the defendant was obligated to turn over the settlement proceeds to the plaintiff, but instead, she kept and used the funds. That unauthorized retention and use of the res of the trust constitutes a breach of her fiduciary duty that resulted in a loss to the plaintiff of $4,835.00. The court must now determine whether the defendant's breach amounts to a defalcation. *See Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013).

The Supreme Court, resolving divisions among the circuit courts, held that "defalcation" as used in Section 523(a)(4) requires "a culpable state of mind" with a "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 269. Defalcation, however, "can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity." *Id.* at 275 (citations omitted). It even includes "*nonfraudulent* breaches of fiduciary duty." *Id.* (citations omitted).

The Supreme Court found that when actual knowledge is lacking, intent that satisfies 11 U.S.C. § 523(a)(4) can be still be shown "if the fiduciary 'consciously

disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that [her] conduct will turn out to violate a fiduciary duty." *Id.* at 274; *see also Lawrence v. Barber (In re Barber)*, 605 B.R. 495, 504 (Bankr. M.D. Tenn. 2019). Further, the substantial and unjustifiable risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to [her], [her] disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Bullock*, 569 U.S. at 274. (citations omitted).

As discussed above, the plaintiff's proof respecting its communications with the defendant was vague and generalized. There was an absence of credible proof that the defendant was even aware that she owed the plaintiff for medical services rendered when she received the settlement check. The defendant rationally believed that any sums owing for medical services had been paid by Tri-Care or Progressive. There is simply insufficient proof to support a finding that the defendant had a culpable state of mind with respect to her behavior as a fiduciary. Consequently, the court finds that the plaintiff has failed to satisfy its burden of establishing that the defendant committed a defalcation by a preponderance of the evidence and declines to declare the defendant's indebtedness nondischargeable under 11 U.S.C. § 523(a)(4).

### III. Conclusion

For the forgoing reasons, the court will enter a separate judgment for the defendant, holding that the defendant's indebtedness to the plaintiff is not excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6).

###